**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**FUDDRUCKERS, INC. and MAGIC
RESTAURANTS, LLC,**

      **Plaintiffs,**

**v.**                               **CASE NO.  3:04CV168/RS/EMT**

**FUDPUCKER'S, INC. and FUDPUCKER'S
OF FORT WALTON BEACH, INC.**

      **Defendants.**

_____/

## ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Before the Court are the parties' cross-motions for partial summary judgment (Doc. 70; Doc. 72).

### FACTS

This case involves a contract and trademark dispute between unaffiliated restaurant businesses with similar names.  Plaintiffs Fuddruckers, Inc. and Magic Restaurants, LLC ("Fuddruckers") own or franchise over 225 restaurants throughout the United States and several foreign countries.  Fuddruckers is a non-upscale, family dining restaurant specializing in hamburgers, french fries, and casual foods.  Phillip J. Romano, the founder of Fuddruckers, opened the first Fuddruckers restaurant on March 15, 1980, in San Antonio, Texas.

Defendants Fudpucker's, Inc. and Fudpucker's of Fort Walton Beach, Inc. ("Fudpucker's") own two local Fudpucker's restaurants, one located on Okaloosa Island in Fort Walton Beach, FL, the other located in Destin, FL.  Like Fuddruckers, Fudpucker's is a non-upscale, family dining restaurant specializing in hamburgers, french fries, and casual foods.  Chester Kroeger, the founder of Fudpucker's, opened the first Fudpucker's restaurant in February or March 1982, inside a Destin nightclub.

The Fuddruckers-Fudpucker's controversy dates back to 1989 when Fudpucker's attempted to register the trademark "Fudburger" with the United States Patent and

Trademark Office ("USPTO").  Fuddruckers opposed this trademark on the grounds that it was confusingly similar to Fuddruckers' trademarks.  The parties resolved the dispute by entering into a 1990 Trademarks Rights Agreement.

A second dispute arose between the parties in 1994 when Fudpucker's attempted to register with the USPTO two trademarks bearing the word "Fudpucker's." After Fuddruckers filed suit in this Court, the parties again resolved their differences by entering into a 1995 Agreement which incorporated by reference the 1990 Trademark Rights Agreement.

The present controversy arose in April 2004, when Fernando Calvo, the then-Director of Franchising for Fuddruckers, submitted a proposal to open a Fuddruckers restaurant in the Greater Destin-Fort Walton Beach area.  An attorney for Fudpucker's mailed Calvo a letter in April 2004, threatening legal action should Calvo pursue his plan to open a Fuddruckers restaurant in that area.  Thereafter, Calvo abandoned his franchise interests in the Destin-Fort Walton Beach market.  Fuddruckers contends that another franchisee has expressed interest in opening a Fuddruckers restaurant in the Florida panhandle but has refused to initiate the process because of the current dispute. Fuddruckers commenced this action on May 6, 2004.

The Second Amended Complaint (Doc. 17-1) alleges that Fudpucker's is interfering with the right of Fuddruckers to open restaurants in the greater Fort Walton Beach-Destin, Florida, area, and that such interference is "contrary, not only to common law, but also to the various agreements entered into by and between the various parties."  (Doc. 17-1:6 ¶ 21.)  Count One requests entry of a declaratory judgment that Fuddruckers may open restaurants in the Fort Walton Beach-Destin area without violating any contract right nor common law right of Fudpucker's and that Fudpucker's be required to mark all of its advertising and promotional materials with a disclaimer that "Fudpucker's restaurant is not associated with Fuddruckers' restaurants."  (Doc. 17-1:7 ¶¶ 25-26.)

Count Two alleges that the alleged interference by Fudpucker's against the attempt by Fuddruckers to open restaurants in the Fort Walton Beach-Destin area constitutes a breach of the 1990 and 1995 Agreements.  Fuddruckers contends that the alleged breach has resulted in damages and permits it to terminate the Agreements.

Count Three alleges fraud.  Fuddruckers contends that Fudpucker's fraudulently induced it into entering into the 1990 Agreement by claiming that it was without knowledge of the Fuddruckers' service mark when it opened its first Fudpucker's restaurant in 1982.  Fuddruckers asserts that Fudpucker's knew that such representation was false and that but for such representation, Fuddruckers would have never entered into the 1990 Agreement.  Accordingly, Fuddruckers requests that the agreements between the parties be terminated or rescinded for fraud.

In its Answer (Doc. 18), Fudpucker's denies the allegations, asserts that it has a "valid and enforceable exclusive right" as well as a "senior federal right" to the "Fudpucker's" service mark, and claims that Fuddruckers has waived any rights to enforce exclusive use of the trademark "Fuddruckers" within the geographic service area of Fudpucker's.  Fudpucker's further contends that Fuddruckers has failed to give the appropriate notice and opportunity to cure certain alleged breaches.  (Doc. 18:3-4 ¶¶ 1-4.)  Finally, Fudpucker's asserts a counterclaim against Fuddruckers, which includes counts for: (1) declaratory judgment; (2) breach of contract; (3) cancellation or restriction of the Fuddruckers registration; (4) damages; and (5) injunction prohibiting Fuddruckers from establishing any new Fuddruckers restaurants within the zone of reputation of Fudpucker's, as defined in the Agreements.

Fuddruckers filed a Motion for Partial Summary Judgment on November 4, 2005 (Doc. 72), requesting judgment on the following:

(1) That Plaintiffs have no geographic restrictions as to where they may open their Fuddruckers restaurants;

(2) That Defendants have no lawful use of "Fudpucker's" for restaurant services prior to March 29, 1982;

(3) That Defendants may not claim any benefit of any use of "Fudpucker's" for restaurant services by Chester Kroeger before their earliest corporate formation date, namely, June 23, 1983; and

(4) That Defendants should be enjoined from using "Fudpucker's" for restaurant services.

Fudpucker's filed a Motion for Partial Summary Judgment on November 4, 2005 (Doc. 70), requesting judgment on the following:

(1) That an oral assignment of the "Fudpucker's" mark by Kroeger to Fudpucker's, Inc. was valid;

(2) That the fraud claim is time-barred or in the alternative, that Fudpucker's committed no fraud against Fuddruckers;

(3) That Fudpucker's never abandoned its alleged common law rights to the Fudpucker's mark;

(4) That Fudpucker's has exclusive rights to the geographic area defined in the agreements;

(5) That Fuddruckers is estopped from challenging the use of the Fudpucker's mark in the geographic area defined by the agreements; and

(6) That all claims brought by Fuddruckers against Fudpucker's in the present case are barred under the "Mutual Release" clause of the 1990 Agreement.

The parties agree that federal jurisdiction is based on diversity jurisdiction in 28 U.S.C. § 1332 and the federal trademark and unfair competition questions arising under 28 U.S.C. § 1338(a) and (b).

**DISCUSSION**

**A. The Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).  "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton, 965 F.2d at 998 (citing Matsushita, 475 U.S. at

587, 106 S. Ct. at 1356).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251, 106 S. Ct. at 2512. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)). However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 251, 106 S. Ct. at 2511).

If the movant satisfies its initial burden under Rule 56(c) by demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton, 965 F.2d at 998 (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S. Ct. at 2513 (citing Adickes, 398 U.S. at 158-59, 90 S. Ct. at 1609). In light of the summary judgment standard, this Court will apply the relevant substantive law to the facts of the case.

**B.  The Substantive Law**

  **1.  The Settlement Agreements Govern This Dispute**

Assuming that the 1990 and 1995 Agreements are enforceable, those settlement agreements will determine the rights and obligations of the parties with respect to the present controversy.  The 1990 and 1995 Agreements state that they are to be governed by, interpreted, and construed in accordance with Florida law.  (Doc. 1:26 ¶ 17; Doc. 1:39 ¶ 4.3.)   "Under Florida law, 'the validity and effect of a settlement and release are governed by contract law.'" Mergens v. Dreyfoos, Jr., 166 F.3d 1114, 1117 (11th Cir. 1999) (quoting Travelers Ins. Co. v. Horton, 366 So. 2d 1204, 1205 (Fla. Dist. Ct. App. 3rd 1979)).  "A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract." Mergens, 166 F.3d 1114, 1117 (11th Cir. 1999) (quoting Medical Center Health Plan v. Brick, 572 So. 2d 548, 551 (Fla. Dist. Ct. App. 1st 1990)).  "Trademark agreements, in which two parties agree on their respective rights in a mark, 'are favored under the law.'" Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir. 2002) (quoting Clorox Co. v. Sterling Winthrop, Inc., 117 F.3d 50, 55 (2d Cir. 1997)).  "In the absence of a showing of fraud or undue influence [a settlement] is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy." MWS Wire Industries, Inc. v. California Fine Wire Co., 797 F.2d 799, 802 (9th Cir. 1986)

  **2.  Defendants Committed No Fraud As A Matter of Law**

Although both parties admit that the settlement agreements govern this dispute, Fuddruckers argues in the alternative that the settlement agreements are void for fraud. In order to establish fraud under Florida law, a plaintiff must prove: (1) the defendant made a false representation of a past or present material fact; (2) the defendant knew the statement was false; (3) the misrepresentation was made for the purpose of inducing the plaintiff to rely on it; and (4) the plaintiff was injured by acting in justifiable or reasonable reliance on the misrepresentation. Finn v. Prudential-Bache Securities, Inc., 821 F.2d 581, 585-86 (11th Cir. 1987); Pettinell v. Danzig, 722 F.2d 706, 709 (11th Cir. 1984); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1425 (S.D. Fla. 1996).

Plaintiffs contend that Defendants falsely represented to them that Fudpucker's was without knowledge of the Fuddrucker's service mark when Fudpucker's began

using the service mark "Fudpucker's" in March 1982. (Doc. 72:13.)  Plaintiffs maintain that this misrepresentation was echoed in paragraph 1.2 of the 1990 Agreement where Defendants represented that they rendered their "services prior to Fuddruckers receiving its federal registration and that the recognition of such concurrent rights does not effect Fuddruckers' presumptive and incontestable legal rights derived from its federal trademark and service mark registrations."  (Doc. 72:13.)

Plaintiffs' fraud allegations are time barred.  Under Fla. Stat. §§ 95.11(3)(j) and 95.031(2)(a), a legal or equitable action founded on fraud shall be commenced within four years,

> with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, . . . , <u>but in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.</u>

(Emphasis added.)

Here, both the Second Amended Complaint (Doc. 17-1 ¶ 34) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 72:13) allege that Defendants fraudulently induced Plaintiffs into entering into the 1990 Agreement.  The 1990 Agreement is a settlement agreement that was drafted and executed in April, 1990.  The present lawsuit, however, was commenced by Plaintiffs in May, 2004.  Therefore, almost fourteen years have past between the date of the alleged fraud and this action. Plaintiffs' fraud claim is time-barred under Fla. Stat. § 95.031(2)(a).

Plaintiffs attempt to circumvent the time constraints of Fla. Stat. § 95.031(2)(a) by asserting in their Response to Defendants' Motion for Partial Summary Judgment (Doc. 87) that Defendants continued to misrepresent and omit material facts after the 1990 Agreement, fraudulently inducing Plaintiffs into entering into the 1995 Agreement.  This argument fails for four reasons.  First, neither the Second Amended Complaint (Doc. 17-1 ¶ 34) nor Plaintiffs' Motion for Partial Summary Judgment (Doc. 72:13) allege fraud with respect to the 1995 Agreement.  The only mention of fraud by Plaintiffs in those documents concerns fraud with respect to the 1990 Agreement.

Second, Plaintiffs' Response to Defendants' Motion for Summary Judgment

(Doc. 87) fails to specify with particularity the alleged misrepresentations and omissions which induced Plaintiffs into signing the 1995 Agreement.  Therefore, Defendants have not properly been placed on notice of their allegedly fraudulent activities with respect to the 1995 Agreement so as to permit them to defend themselves.

Third, if Plaintiffs had exercised "due diligence," they should have discovered the facts giving rise to their fraud claim before the expiration of the four-year limitations period in § 95.11(3)(j).  This Court finds it difficult to believe, nor could any reasonable jury believe, that Plaintiffs would enter into an agreement with an adversary who bears a similar name without first investigating the information material to any potential claim that Plaintiffs might have against Defendants.  Plaintiffs themselves assert in their Motion for Partial Summary Judgment (Doc. 72) that "From its early beginnings, Plaintiffs' predecessors maintained a rigorous vigilance of monitoring and enforcing its various trademark related rights . . . It was the company's policy early on to aggressively pursue and maintain the integrity of its various marks from acts of infringement."  (Doc. 72:3-4.)  Now, Fuddruckers essentially urges this Court to accept that its "rigorous vigilance" and "aggressive pursuit" of its "trademark rights" have nonetheless reduced it to a victim of fraud at the hands of a local business.  Such an argument is disingenuous.

Plaintiffs cite to Eleventh Circuit case law holding that the recipient of a misrepresentation may rely on that misrepresentation unless its falsity is subjectively known or obvious to him.  See Chris Berg, Inc. v. Acme Mining Co., 893 F.2d 1235, 1238 (11th Cir. 1990) (citations omitted).  Here, the information that Plaintiffs claim was misrepresented to them - when Fudpucker's commenced its operations and used the Fudpucker's service mark and whether Fudpucker's had prior knowledge of Fuddruckers' service mark before using the Fudpucker's service mark - was either known to Plaintiffs actually or constructively or so obvious that it could have easily been discovered or reasonably inferred simply by examining certain documents.  Moreover, the Eleventh Circuit in Berg was interpreting the "reliance" element of fraud, not Fla. Stat. § 95.11(3)(j) which overlays a "should have been discovered with due diligence" standard on top of the "subjectively known or obvious" Eleventh Circuit gloss.

Further, the Eleventh Circuit has held that "reliance on misrepresentations or omissions by the opposing parties negotiating a settlement agreement in the context of

a contentious and adversarial relationship is unreasonable as a matter of law." Somerset Pharmaceuticals, Inc. v. Kimball, 49 F. Supp. 2d 1335, 1340 (M.D. Fla. 1999) (citing Mergens, 166 F.3d at 1118).  Plaintiffs contend that Somerset and Mergens are inapplicable because they characterize the relationship between Fuddruckers and Fudpucker's as "conciliatory" rather than "acrimonious."  This Court disagrees. Although viewing the facts in the light most favorable to Plaintiffs, it may have been true that the Fuddruckers-Fudpucker's relationship was "conciliatory" at one time, that situation was clearly altered in 1994 when Fuddruckers commenced legal proceedings against Fudpucker's in this Court.  It was at that time that Fuddruckers placed *itself* on notice that any contractual agreement between itself and Fudpucker's was tenuous at best.  After all, the 1990 Agreement and later, the 1995 Agreement were both intended to resolve the disputes between the parties.  Obviously, neither agreement has accomplished its goal.  The controversy in 1990, followed by the 1994 lawsuit, and culminating with this lawsuit, reflect the delicate and adversarial relationship between the parties.  When Fuddruckers filed the lawsuit in 1994 and then entered into the 1995 Agreement, surely it recognized the possibility that future legal proceedings were possible.  Indeed, it was Fuddruckers who *initiated* the current action.  In the face of the tenuous nature of the agreements and the adversarial relationship between the parties, this Court concludes that the Fuddruckers-Fudpucker's relationship at the time of the agreement in 1995 was closer to the "acrimonious" rather than the "conciliatory" end of the spectrum.  At that time, Fuddruckers was either aware of the information that it claims was misrepresented or should have been aware of such information had it exercised due diligence.

Finally, this Court concludes that Plaintiffs have failed to present evidence of any fraudulent misrepresentation or omission by Defendants.  Plaintiffs have simply not provided any evidence at all to support a reasonable inference that Defendants knowingly misrepresented the timing of their operations or the date on which they first used the Fudpucker's service mark.  Further, Plaintiffs have not offered evidence to support a reasonable inference that Defendants had knowledge of the Fuddruckers service mark prior to their use of the Fudpucker's service mark.  Indeed, paragraph 0.4 of the 1990 Agreement states that "Fudpucker's, without knowledge of the Fuddruckers

service mark, began using the service mark Fudpucker's in March 1982, in connection with restaurant and bar services in Destin, Florida."  (Doc. 71-13:15 ¶ 0.4.)  If Plaintiffs were uncertain of the accuracy of such a representation or were relying solely on Defendants' representations in permitting such a clause to be inserted into the Agreement, this Court has no doubt that Plaintiffs would have modified paragraph 0.4 by couching it in terms similar to those contained in paragraph 0.5, which reads, in relevant part: "Fudpucker's prominently uses a distinctive pelican design on its signs, menus, and other items, as well as other distinctive designs and slogans, <u>which are claimed to have been used</u> in conjunction with its Fudpucker's service mark since March, 1982."  (Doc. 71-13:15 ¶ 0.5.)  That Plaintiffs failed to include the word "claimed" or similar modifying language in paragraph 0.4 of the 1990 Agreement strongly suggests that Plaintiffs had independently convinced themselves that Fudpucker's was, in fact, without knowledge of the Fuddruckers service mark when it began using the Fudpucker's service mark in March 1982.  Absent fraud, the 1990 and 1995 Agreements are valid.

### 3.  Interpreting the 1990 and 1995 Agreements

This Court must now interpret the 1990 and 1995 Agreements because the Agreements define the rights and obligations of the parties with respect to the present controversy.  Although the parties discuss the merits of the underlying cause of action for trademark infringement by analyzing such issues as "abandonment," "lawful use," "assignments of trademarks," and "tacking," this Court need not venture into an analysis of those issues because the 1990 and 1995 Agreements entered into by the parties are controlling.  By consummating the 1990 and 1995 Agreements, the parties evidenced their intent to bypass judicial resolution of the merits of the underlying trademark law issues and to instead define their own rights and obligations.

> There is an 'overriding public interest in settling and quieting litigation.' <u>United States v. McInnes</u>, 556 F.2d 436, 441 (9th Cir. 1977). <u>See</u> <u>also</u> <u>Williams v. First National Bank</u>, 216 U.S. 582, 595, 54 L. Ed. 625, 30 S. Ct. 441 (1910); <u>Golden v. Faust</u>, 766 F.2d 1339, 1341 (9th Cir. 1985).  Promotion of this policy requires judicial enforcement of settlement agreements. If the merits of a cause of action underlying a compromise agreement could, as a matter of course, be inquired into in an action to enforce the settlement, neither settlement nor the

> policies it promotes would be fostered. The parties would be
> subjected to the expense, delay, and uncertainty they sought
> to avoid through settlement; the court would be burdened with
> trial of the underlying dispute and the preparation which
> precedes it.

MWS Wire Industries, Inc. v. California Fine Wire Co., 797 F.2d 799, 802 (9th Cir. 1986).  Accordingly, this Court will hold the parties to the Agreements they signed.

The Supreme Court of Florida has stated that "the rule is too well established to require the citation of authorities that ordinarily the construction of a written contract is a matter of law which must be determined by the Court and is not within the province of the jury."  City of Leesburg v. Hall, 96 Fla. 186, 191, 117 So. 840, 841 (Fla. 1928).  In Maines v. Davis, 491 So. 2d 1233 (Fla. Dist. Ct. App. 1st 1986), the court set forth various rules of contract construction:

> 1) The contract should not be held void for uncertainty unless
> indefiniteness reaches a point where construction becomes
> futile; 2) ambiguities are to be construed against the drafter; 3)
> the conduct of the parties through their course of dealings shall
> be considered to determine the meaning of the written
> agreement where the terms are in doubt; 4) the objects to be
> accomplished shall be considered, and to this end the court
> shall place itself in the position of the parties when the contract
> was entered into; 5) the interpretation of the contract should be
> consistent with reason, probability, and practical aspects of the
> transaction; and 6) the contract should be considered as a
> whole, not in its isolated parts.

Maines, 491 So. 2d at 1235 (citations omitted).  In light of these rules of contract construction, this Court will interpret the 1990 and 1995 Agreements.

### a. "Concurrent Rights" Is Synonymous with "Concurrent Use"

The primary dispute between the parties involves paragraph 1.2 of the 1990 Agreement.  Paragraph 1.2 states:

> The parties recognize and acknowledge that concurrent rights
> have been established by FUDPUCKER'S within the limited
> Destin-Ft. Walton Beach, Florida geographical area, as set out
> in Article 0.4, in which FUDPUCKER'S has rendered its
> services prior to FUDDRUCKERS receiving its federal
> registration and that the recognition of such concurrent rights

does not affect FUDDRUCKERS' presumptive and
incontestable legal rights derived from its federal trademark
and service mark registrations.  The parties acknowledge that
no such concurrent right exists as to any additional
FUDPUCKER'S restaurant permitted by Article 1.1.

(Doc. 71-13:17 ¶ 1.2.)

Fudpucker's contends that the term "concurrent rights" is synonymous with the
term "concurrent use."  The parties agree that "concurrent use" is a term of art in
trademark law which entitles one party with a mark that is confusingly similar to the
mark of another party to use that mark within a defined geographic area to the exclusion
of the other party so as to avoid public confusion.  Fudpucker's asserts that the 1990
Agreement grants it concurrent use rights of the "Fudpucker's" mark within the
geographic area defined in that Agreement - the Destin-Ft. Walton Beach area.  These
concurrent use rights, Fudpucker's argues, grants it exclusive rights to the
"Fudpucker's" mark in the Destin-Ft. Walton Beach area and prohibits Fuddruckers from
opening a Fuddruckers restaurant in that area.

Fuddruckers rejects the notion that "concurrent rights" is a term of art.  Instead,
Fuddruckers contends that "concurrent rights" is not synonymous with "concurrent use"
and urges this Court to apply the common dictionary definition of "concurrent."  Under
the dictionary definition of "concurrent," Fuddruckers asserts that "[c]oncurrent means
'simultaneous' or 'operating at the same time'" and "[i]n other words, both Defendants
and Plaintiffs have the right to operate in the designated area at the same time."  (Doc.
72:14)  (Emphasis in original).

This Court finds the interpretation of "concurrent rights" advocated by Plaintiffs to
be without merit.  First, when the 1990 Agreement was consummated, both parties were
represented by counsel.  It would be incredible if Plaintiffs' attorney, knowing that this
dispute concerned trademarks and knowing that the word "concurrent" has significance
in trademark law, nevertheless consented to incorporating the phrase "concurrent
rights" into the 1990 Agreement if "concurrent rights" was not intended to be
synonymous with "concurrent use."  Indeed, the 1990 Agreement itself states that its
purpose was to avoid and resolve "any potential confusion, mistake or deception." (Doc.
71-13:16 ¶ 0.7.)  Surely, to avoid any confusion, Plaintiffs would have insisted that

Defendants replace the loaded term "concurrent" with some other insignificant term unrelated to trademark terminology if "concurrent use" was not what Plaintiffs intended. That they did not reflects either Plaintiffs' intent to deceive Defendants by failing to protest inclusion of the phrase "concurrent rights" so as to make an issue of the phrase in the future, an intent that would clearly be contrary to the spirit of the 1990 Agreement, or Plaintiffs' intent to assent to and acknowledge Defendants' concurrent use rights. "Concurrent" is not a word routinely used in common, everyday conversation. Clearly, its inclusion in only the second paragraph at the heart of the 1990 Agreement transparently indicates that the meaning of "concurrent" was more significant to the parties than its common dictionary definition.

Second, paragraph 1.2 explicitly incorporates paragraph 0.4 which states that "FUDPUCKER'S has rendered its services prior to FUDDRUCKERS receiving its federal registration." Thus, the phrase "concurrent rights" is mentioned side-by-side with the acknowledgment that Fudpucker's rendered services in the Destin-Ft. Walton Beach area before Fuddruckers registered its service mark. This is extremely important to ascertaining the meaning of "concurrent rights." The United States Supreme Court has held that "[o]nly where the marks are used in the same geographic market does the principle of *prior appropriation and use* control to vest the senior user with *exclusive* rights." Popular Bank of Florida v. Banco Popular de Puerto Rico, 9 F. Supp. 2d 1347, 1354 (S.D. Fla. 1998) (citing Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 416, 60 L. Ed. 713, 719 (1916)) (emphasis added). Thus, reading the phrase "concurrent rights" with the acknowledgment in the 1990 Agreement that Fudpucker's rendered its services in the Destin-Ft. Walton Beach area prior to Fuddruckers' registration of its mark permits this Court to ascertain the parties' intended meaning of "concurrent rights" at the time the agreement was executed: Fudpucker's, through prior appropriation and use of its mark in the Destin-Ft. Walton Beach area, was a senior user and accordingly, was vested with "exclusive rights" in that geographic area. Although Plaintiffs *now* dispute that Defendants were prior users of their service mark and hence not entitled to concurrent use rights, such an argument is irrelevant to interpreting the parties intentions and understanding of the phrase "concurrent rights" at the time the 1990 agreement was executed. At that time, Plaintiffs *did* acknowledge Defendants' prior use

of the "Fudpucker's" service mark and therefore *did* intend "concurrent rights" to be synonymous with "concurrent use."

Third, "concurrent rights" has been used interchangeably with the phrase "concurrent use" in case law and by the United States Patent and Trademark Office. See, e.g., Allard Enters., Inc. v. Advanced Programming Resources, Inc., 249 F.3d 564, 575 (6th Cir. 2001) ("In a more straightforward case in which a senior user holds a federal registration subject to limited concurrent rights of a junior user, permitting some form of internet use seems necessary; otherwise, if two parties have concurrent rights to the same mark in distinct geographical areas, neither party would ever be allowed any use of the internet") (emphases added); Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 747 (2d Cir. 1994) ("We need not go so far as to limit the District Court's jurisdiction in order to oblige it to frame more carefully the scope of its injunction in light of the concurrent rights of the parties.  'In establishing the parameters of injunctive relief in the case of lawful concurrent users . . .'") (emphases added); Action Temporary Servs, Inc. v. Labor Force, Inc., 870 F.2d 1563, 1565 (Fed. Cir. 1989) ("A valid application cannot be filed at all for registration of a mark without 'lawful use in commerce,' and, where a claim is made of concurrent rights, such use must begin prior to the filing date of any application by a conflicting claimant to the mark") (emphases added); Mother's Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1573 (Fed. Cir. 1983) ("Lanham Acts [permit] concurrent rights to be adjudicated only in a concurrent use proceeding, not in a cancellation proceeding") (emphases added); Selfway, Inc. v. Travelers Petroleum, Inc., 579 F.2d 75, 82 (Cust. & Pat. App. 1978) ("We are convinced . . . that the Lanham Act, in its present form, provides for only one inter partes procedure in the PTO where such concurrent rights may be adjudicated, and that is the concurrent use proceeding") (emphases added); Food Ctr., Inc. v. Food Fair Stores, Inc., 356 F.2d 775, 781-82 (1st Cir. 1965) (concurrent "rights" is used interchangeably throughout the opinion with concurrent "use"); Pure Imagination, Inc. v. Pure Imagination Studios, Inc., 2004 U.S. Dist. LEXIS 23064, *37 (N.D. Ill. 2004) ("the Lanham Act provided for constructive notice of registration and thereby modified the 'common-law rule that allowed acquisition of concurrent rights by users in distinct geographic areas if the subsequent user adopted the mark without knowledge of prior use'") (emphasis added).

Several parts of Section 1207.04, Concurrent Use Registration, of the Trademark Manual of Examination Procedures refer to the "concurrent rights" of the parties.  <u>See</u> Sections 1207.04(c); 1207.04(e); and 1207.04(f)(i), TMEP, 4th ed.

Fourth, if this Court were to accept the definition of "concurrent rights" advanced by Plaintiffs, confusion would be injected into the marketplace because Fuddruckers and Fudpucker's would be permitted to coexist in the same geographic area.  The stated purpose of the 1990 and 1995 Agreements, however, as well as the mandates of the Lanham Act itself generally preclude "the use in commerce [of] any service mark 'if such use is likely to cause confusion, or to cause mistake, or to deceive."  <u>Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.</u>, 675 F.2d 1160, 1163 (11th Cir. 1982) (<u>quoting</u> Lanham Act, 15 U.S.C. § 1114(1)(a)).

The Eleventh Circuit has considered the following factors in assessing the likelihood of confusion: (1) the distinctiveness of the mark at issue; (2) the similarity of the design; (3) the similarity of the service; (4) the similarity of service outlets; (5) the similarity of customers; (6) the similarity of advertising media utilized; (7) the defendant's intent; and (8) any actual confusion.  <u>Coach House Rest., Inc. v. Coach and Six Rests., Inc.</u>, 934 F.2d 1551, 1561 (11th Cir. 1991) (citations omitted).  Although the Agreements state otherwise, Plaintiffs and Defendants *both* concede in their Motions that the names "Fudpucker's" and "Fuddruckers" and the services provided by each are confusingly similar.  This Court agrees.  Both marks begin with the letters "Fud" and end with the letters "uckers."  The only differences are that Plaintiffs' mark has two "d's" in "Fudd"; Plaintiffs' mark uses an "r" in the middle rather than a "p"; and Plaintiffs' mark does not use an apostrophe before ending in "s."  Both marks have three syllables and a similar sound when spoken.  When viewed visually, both marks have a similar appearance and neither mark has any apparent real meaning to the consumer.  Neither mark has a dictionary definition or meaning.  The services rendered by both parties are very similar because both parties are restaurants.  Both parties serve casual foods including hamburgers and french fries.  The food at both parties' restaurants is similarly priced and is not considered upscale in pricing.  Because Plaintiffs acknowledge the confusingly similar nature of the service marks and services provided by Defendants, they could not possibly have intended "concurrent rights" to afford them a privilege to

coexist alongside Defendants in the Destin-Ft. Walton Beach area.  Indeed, one major purpose of the Agreements was to prevent confusion to the public, not to *create* it.

Fifth, the 1990 and 1995 Agreements unequivocally obligate both parties to avoid taking steps that might result in public confusion and impose an affirmative obligation on both parties to correct any confusion that results.  Specifically, the 1990 Agreement requires each party to "take whatever steps are reasonably required to avoid confusion to the public due to contemporaneous advertising and promotional campaigns."  (Doc. 71-13:18-19 ¶ 3.1.)  The 1990 Agreement also states that "[s]hould either party become aware at any time of any actual confusion between their respective marks, they will cooperate in undertaking such steps as they shall mutually determine are necessary in order to avoid continued confusion." (Doc. 71-13:20 ¶ 3.4.)  Finally the 1990 Agreement asserts that "[t]he parties agree to undertake such steps as may be reasonably required to avoid confusion to the public should any [] similarity come to the attention of either party." (Doc. 71-13:20 ¶ 3.5.)  Paragraph (14) of the 1995 Agreement echoes the obligations that are stated in the 1990 Agreement by requiring both parties to use their "best efforts" to avoid marketplace confusion:

> ***Best Efforts***.  The parties agree to use their best efforts to cooperate with one another to avoid marketplace confusion as to their respective goods and services that are provided in the marketplace by [Fuddruckers] under its FUDDRUCKERS marks and [Fudpucker's] under its FUDPUCKER'S/FUDPUCKER marks.  The parties agree to undertake to take such steps as may be reasonably required to avoid confusion to the public should any similarity come to the attention of either party.

(Doc. 71-13:7 ¶ 14.)

Based on this duty to avoid confusion that is explicitly stated in the 1990 and 1995 Agreements, the only possible meaning of "concurrent rights" is that Fudpucker's has exclusive rights to the Destin-Fort Walton Beach area.  Any other interpretation would permit Fuddruckers to enter into the geographic area already inhabited by Fudpucker's and introduce confusion into the marketplace, an act clearly prohibited by the 1990 and 1995 Agreements.  The major purpose of the Agreements was to protect the parties' respective territories.

Plaintiffs rely on Gray v. Daffy Dan's Bargaintown, 823 F.2d 522 (Fed. Cir. 1987) to support their conclusion that Defendants may not obtain concurrent use rights by private agreement.  Plaintiffs' reliance on Gray is misplaced.  First, Gray was concerned with a party's entitlement to a concurrent use *registration*, not with the validity of a private settlement *agreement* between the parties.  Second, the court in Gray determined that the junior party and later user of a service mark was not entitled to concurrent use registration of its mark because the junior user's geographic area of actual use overlapped with the senior user's geographic area.  Id. at 526-27.  In other words, both parties in Gray used an identical mark for the same and closely related services in the same geographic area, thereby causing confusion to the public.  Id.  Gray is not this case.  Here, the 1990 and 1995 Settlement Agreements grant concurrent rights to Defendants in the Destin-Fort Walton Beach area to the exclusion of Plaintiffs.  Thus, by entering into the 1990 and 1995 Agreements, the parties sought to avoid the overlap that was present in Gray.  It is *Plaintiffs* who are now attempting to create an overlap in the Destin-Fort Walton Beach area, the type of overlap which Gray expressly forbids, at least with respect to concurrent use registrations.  Thus, Gray, if anything, supports Defendants' case, not Plaintiffs' case.  Indeed, the Gray court distinguished the facts before it from the facts of a different case involving a private settlement agreement:

> In Beatrice Foods, there had been an overlap in use by the parties.  However, there, the parties worked out a settlement under which each agreed to recognize and honor the exclusive rights of the other in separate areas of use.  In other words, one party obtained rights in the "overlap" area, and the other party expressly withdrew from that area to avoid confusion to the public.  In contrast, the record here shows, not merely that the junior party inadvertently or temporarily entered into the senior party's territory, but that such use was continuing at the time of the board's decision with no agreement between the parties that it would cease.

Id. at 526 (emphasis added).  This Court also notes that the Gray court itself used the phrase "concurrent rights" interchangeably with the phrase "concurrent use": "A valid application cannot be filed at all for registration of a mark without 'lawful use in commerce,' and, where a claim is made of concurrent rights, such use must begin prior

to the filing date of any application by a conflicting claimant to the mark." Id. "Concurrent rights" means that Fudpucker's has exclusive rights to the Destin-Fort Walton Beach area, to the exclusion of Fuddruckers, pursuant to the intent of the parties as codified in the 1990 Agreement.

Finally, paragraph 3.2 of the 1990 Agreement which permits Fuddruckers to expand its restaurant and bar services to within one hundred miles of Mobile, Alabama and/or Pensacola, Florida, is not inconsistent with the exclusive rights of Fudpucker's within the Destin-Fort Walton Beach area.  Just because Plaintiffs may have rights to open restaurants within one hundred miles of Pensacola and Mobile does not mean that the one hundred mile area includes the Destin-Fort Walton Beach area.  An axiom of contract construction is that a specific provision in a contract takes precedence over a more general provision.  See Arthur Rutenberg Corp. v. Pasin, 506 So. 2d 33, 34 (Fla. Dist. Ct. App. 4th 1987).  Here, paragraph 1.2, the more specific provision, carves out a specific area exclusive to Fudpucker's - the Destin-Fort Walton Beach area.  The more general provision, paragraph 3.2, governs the remaining territory.  Thus, paragraph 3.2 is not inconsistent with the concurrent use rights granted to Defendants in the Destin-Fort Walton Beach area.

### b. Plaintiffs' Claims Are Barred By the "Mutual Release" Clause of Paragraph 4.4 Of the 1990 Agreement

Paragraph 4.4 of the 1990 Agreement states:

> Mutual Release.  For so long as the provisions of this Agreement are adhered to in good faith, the parties hereto mutually release each other, and their officers and employees, from any cause or causes of action for trademark infringement, service mark infringement, unfair competition or the like, including proceedings instituted in the Patent and Trademark Office, arising out of or relating to the use by said parties of the marks FUDPUCKER'S, FUDDRUCKERS, or FUDBURGER, both alone and in combination with other words, designs or symbols, in connection with restaurant and bar services and goods incidental to the providing or promotion of such services.

(Doc. 71-13:21 ¶ 4.4.)

Here, no evidence submitted to this Court supports any reasonable inference that Defendants have not acted in good faith with respect to the Agreements.  In

contrast, it is Plaintiffs who have engaged in questionable behavior by bringing this lawsuit.  Plaintiffs' proffered interpretation of "concurrent rights" and allegations of fraud some fourteen years after it was allegedly committed are disingenuous.  It is quite obvious to this Court that the sole purpose of this lawsuit is an attempt by Plaintiffs to either force concessions from Defendants or to circumvent the very Agreements that Plaintiffs signed.  That Plaintiffs' claims are couched in terms of "breach of contract," "declaratory relief," and "fraud" are merely pretexts for disrupting the Agreements and revisiting trademark issues that have already been resolved by the parties through agreement.  Plaintiffs' claims are barred by paragraph 4.4 of the 1990 Agreement.  Moreover, Plaintiffs have breached the requirement in the 1990 Agreement that they "make a good faith effort to resolve any conflict between them prior to filing a lawsuit" (Doc. 71-13:7 ¶ 13) because their proffered interpretations of the 1990 and 1995 Agreements are dishonest and commercially unreasonable.

### 4.  The Nonjusticiable Issues

Various requests for declaratory relief by both parties are nonjusticiable with respect to this case and controversy and will therefore not be ruled on by this Court.  Specifically, Plaintiffs' Motion for Partial Summary Judgment requests declaratory judgments holding that "Defendants have no lawful use of 'Fudpucker's' for restaurant services prior to March 29, 1982" and "Defendants may not claim any benefit of any use of 'Fudpucker's' for restaurant services by Kroeger before their earliest corporate formation date, namely, June 23, 1983."  These issues address the merits of the underlying cause of action which was rendered moot by the 1990 and 1995 Agreements.  Because the 1990 and 1995 Agreements resolve the present case and controversy in its entirety, this Court need not address those issues.

Defendants' Motion for Partial Summary Judgment requests declaratory relief affirming the validity of an oral assignment of the Fudpucker's mark and declaratory relief on the issue of whether Defendants abandoned the Fudpucker's mark.  The third counterclaim asserted by Defendants in their Answer to the Second Amended Complaint (Doc. 18) requests termination, cancellation, or modification of Plaintiffs' mark in the event that the 1990 and 1995 Agreements are invalid.  The fourth counterclaim requests damages in the event that the 1990 and 1995 Agreements are

invalid. Again, these requests are conditioned on the invalidity of the 1990 and 1995 Agreements.  However, because the 1990 and 1995 Agreements are valid, the declaratory relief and counterclaims listed above are rendered moot.

### 5.  Defendants Are Entitled to Reasonable Attorney Fees

Paragraph 13 of the 1990 Agreement states that "In the event of litigation, reasonable attorneys' fees shall be awarded to the prevailing party as costs." Accordingly, Defendants are entitled to reasonable attorneys' fees incurred in defending this action.

### CONCLUSION

1.  Plaintiffs' Motion for Partial Summary Judgment (Doc. 72) is denied.

2.  All counts contained in Plaintiffs' Second Amended Complaint (Doc. 17-1) are dismissed with prejudice. All counts (declaratory judgment, breach of agreement and termination, and fraud) were placed in issue by the parties' cross-motions for partial summary judgment and have been addressed by this Court.

3.  Defendants' Motion for Partial Summary Judgment (Doc. 70) is granted in part and denied in part, as follows:

> a.  Defendants' request for summary judgment regarding the oral assignment of the "Fudpucker's" mark is denied.
>
> b.  Defendants' request for summary judgment on Plaintiffs' claim of fraud (Count III) of Plaintiffs' Second Amended Complaint is granted.
>
> c.  Defendants' request for summary judgment on the issue of abandonment of the "Fudpucker's" mark is denied.
>
> d.  Defendants' request for declaratory judgment that Fudpucker's has exclusive geographic rights to the Destin-Fort Walton Beach area is granted.
>
> e.  Defendants' request that Plaintiffs be estopped from challenging Defendants' use of the "Fudpucker's" mark in the Destin-Fort Walton Beach area is granted.
>
> f.  Defendants' request for summary judgment based on the Mutual

Release in the 1990 Trademark Rights Agreement is granted.

4.  With respect to the claims for declaratory relief and injunctive relief asserted in Counts One and Five of the counterclaims alleged by Defendants in their Answer to Second Amended Complaint (Doc. 18), Defendants are granted declaratory and injunctive relief entitling them to the exclusive right to use the "Fudpucker's" service mark in the Destin-Fort Walton Beach area pursuant to the terms of the 1990 and 1995 Agreements.  Plaintiffs shall not use the service mark "Fuddruckers" in the Destin-Fort Walton Beach area.  Plaintiffs shall not open Fuddruckers restaurants in the Destin-Fort Walton Beach area.

5.  With respect to the claim of breach asserted in Count Two of the counterclaim in Defendants' Answer to Second Amended Complaint (Doc. 18), Plaintiffs have breached the 1990 and 1995 Agreements by failing to make a good faith attempt to resolve this conflict.

6.  With respect to the action to cancel or restrict registration of the Fuddruckers mark asserted in Count Three of the counterclaim in Defendants' Answer to Second Amended Complaint (Doc. 18), Defendants' claim is dismissed with prejudice.

7.  With respect to the claim for damages asserted in Count Four of the counterclaim in Defendants' Answer to Second Amended Complaint (Doc. 18), Defendants' claim is dismissed with prejudice.

8.  Defendants are awarded reasonable attorneys' fees incurred in defending this action as provided by paragraph 13 of the 1990 Agreement.  Defendants shall file with this Court an itemized statement of reasonable attorneys' fees incurred in defending this action no later than Friday, June 2, 2006.  Plaintiffs shall file any objections to the attorneys' fees that are sought by Defendants no later than Friday, June 9, 2006.

**ORDERED** on May 25, 2006.

**/s/ Richard Smoak**
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**